# WILSON, CLOSE & CO. *vs.* WILLIAM G. PRITCHETT.

*Contract Obtained by Fraud—When Principal Bound by Fraud of Agent—Contract Signed by Illiterate Person—Evidence—Instruction to Jury.*

A general objection to ,certain evidence, as well as a motion to strike it out, is properly overruled if any part of the evidence is admissible.

The mere fact that a party signing a contract was unable to read does not relieve him from its obligation for he should have sought information as to its contents.

But such a party may show that he was induced to sign the contract in consequence of false statements made to him concerning a material matter.

A principal is bound by a false statement made by his agent, material to the contract and within the apparent scope of the agent's authority.

A principal cannot take the benefit of a contract obtained for him by his agent by means of a fraud, although the fraud was not authorized by the principal.

Defendant who was unable to read was induced by the plaintiff's agent to sign a contract for the purchase of certain goods, which contract set forth that the seller would not be bound by the representations or agreements of agents unless endorsed on the order. Plaintiff's agent told defendant that no goods of that kind would he sold in defendant's town except to the one other dealer and that the freight thereon would amount to a certain sum. In an action on the contract, for refusal to accept the goods, *held*, that the evidence of the defendant and of other parties is admissible to show that both of these statements were false and that the jury was properly instructed that if the defendant was induced to sign the contract in consequence of these false statements the plaintiff is not entitled to recover.

When fraud is relied on as a defense to an action on a contract an instruction to the jury on behalf of the plaintiff which ignores the evidence offered in support of this defense is properly refused.

Appeal from the Circuit Court for Dorchester County (HOLLAND, J.)

The cause was argued before MCSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD and SCHMUCKER, JJ.

*Clement Sullivane* (with whom was *T. Sangston Insley* on the brief ), for the appellants.

Appellee's ignorance of reading cannot shield him, for the simple reason that he was in as good position as anyone who could read—he had within a few feet of him, and as spectator and auditor of the whole transaction, a clerk employed by him for the express purpose of doing his reading and writing for him. The most ordinary prudence should have indicated to him to have his clerk (and not the salesman) read to him the contract before he signed it, but instead of doing so he trusted the salesman to read it, accepted his version, signed the contract, and put away his duplication of it furnished by the salesman (or had it put away by his clerk), and never read it, or had it read to him, until about three weeks later after the goods had come from Iowa to Cambridge, Md. *Cooley on Torts*, 488.

The Court erred in refusing to exclude from the jury all testimony on behalf of defendant purporting to give negotiations, conversations and representations of salesman, Joseph Wonn.

Where a written contract is presented by one party to another for his signature, and such person signs the same without inquiring or informing himself as to its contents and legal effect, though he had at his command the means of doing so, such person will not be heard to say, under a plea of fraud, that he has been deceived and that fraud has been practiced upon him by the other. *Spitze* v. *Baltimore, etc.*, 75 Md. 162; *Weaver* v. *Shriver*, 79 Md. 530; *A. & E. Ency. of Law*, 2 ed., vol. 14, pp. 115, 116 and notes 8 and 1.

Defendant dealt with Joseph Wonn, knowing him to be a commercial traveller or drummer, and was entitled to presume that he possessed those powers only which necessarily, properly and legitimately belong to the character in which he was held out by his principal. Beyond this he dealt with him at his peril, being bound to ascertain whether he had authority to make the unusual bargain offered, and such unusual representations and statements were legally sufficient to put him

upon inquiry. It was his *plain duty* to inquire. And the written limitation of the agent's authority was before him. Ordinary prudence would have disclosed the truth. *Howe Mach. Co.* v. *Ashley*, 60 Ala. 496; *Greenhood* v. *Keator*, 9 Ill. App. 183; *Clark* v. *Smith*, 88 Ill. 298; *Cornemaven* v. *Monaghan*, 24 Mich. 36; *Chambers* v. *Short*, 79 Mo. 207; *Holland* v. *Van Beil*, 89 Ga. 223; *A. & E. Ency. of Law*, 2 ed., vol. 6, pp. 224 and notes 3 and 4; *A. & E. Ency of Law*, 2 ed., vol. 1, pp. 987 and notes 2, 3 and 4.

In the case of a special agent all persons dealing with such agent are bound at their peril to inquire into the nature and extent of his authority, for if he exceeds his authority his principal is in no way bound. *Equitable Law Assur. Soc.* v. *Poe*, 53 Md. 28; *Lister* v. *Allen*, 31 Md. 543; *Hardwick Bros.* v. *Kirwan*, 91 Md. 294; *Hardy* v. *Chesapeake Bank*, 51 Md. 587–589; *Tubman* v. *Lowckamp*, 43 Md. 307; *A. & E. Ency. of Law*, 2 ed., vol. 1, pp. 993–994 and note 1; *Eaton* v. *Gladwell*, 66 N. W. R. 598; *Jennings* v. *Moore*, 47 N. W. R. 127; *Putnam* v. *Russell*, 49 N. W. R. 147; *Simond's Mfg. Co.* v. *Riddle*, 41 N. W. R. 675; *Smith* v. *Kemp*, 52 N. W. R. 639; *Hutchinson* v. *Hutchinson*, 102 Mich. 635; *Edwards* v. *Clark*, 83 Mich. 246; *Spence* v. *Bowen*, 41 Mich. 149; *Skuk* v. *Sterrett*, 50 Mich. 350; *Ives* v. *Williams*, 50 Mich. 100; *Harrow Springs Co.* v. *Whipple Harrow Co.*, 90 Mich. 147; *Cook* v. *First National Bank*, 90 Mich. 214; *Brewster* v. *Potruff*, 55 Mich. 29.

The written contract entered into between the parties must control their rights, and all evidence of contemporaneous oral agreements upon the same subject-matter, varying, modifying or contradicting the written agreement is inadmissible. *Skuk* v. *Sterrett*, 57 Mich. 350.

The rule is based upon the reasonable presumption that where parties have reduced their engagements to writing, and they are plainly and intelligibly stated therein, it is conclusively presumed to embrace all that was intended and to be the best possible evidence of the intent and meaning of those who are bound by it. *Sutherland* v. *Crane*, Walk. 523; *Nichols* v

*Crandall.* 43 N. W. R. 875; *Martin* v. *Hamlin*, 18 Mich. 354; *Vanderman* v. *Thompson*, 19 Mich. 354; *Seaman* v. *O'Heara*, 29 Mich. 66; *Blackwood* v. *Brown*, 34 Mich. 4. At the end of the contract occur these words—"It is understood that there are no verbal agreements which ap ply hereto.". *Held*, that parol evidence of conversations could not be introduced to make the contract cover more than was contained in the written instrument.

The printed contract offered in evidence is plain, legible and free from ambiguities, was the only contract agent was authorized to make, and any other contract, being beyond his au- thority, did not bind his principal, and all evidence thereof should have been excluded.

Joseph Wonn's duties and powers were clearly specified in the printed contract signed by defendant, and defendant is chargeable with knowledge of all it contained, for it was his duty to inspect it, and his negligence of this plain duty does not render the principal liable for the unauthorized acts of his agent. *Equitable L. Assur. Soc.* v. *Poe*, 53 Md. 34; *Story on Agency*, secs. 72, 74, 75, 76; *Wharton on Agency*, 227; *Wharton on Negligence*, 300; *Snow* v. *Warner*, 10 Met. (Mass.) 136; *Reese* v. *Medlock*, 27 Tex. 120; *Dozier* v. *Freeman*, 47 Miss. 660; *Davidson* v. *Porter*, 57 Ill. 300; *Claflin* v. *Continental Jersey Works*, 85 Ga. 27; *North River Bank* v. *Aymar*, 3 Hill, (N. Y.) 262.

Defendant must be considered as being able to read and write, for he had by his side when he executed the contract his clerk whom he had hired to do his reading and writing. A duplicate contract, identical with that delivered to salesman, was left with him and remained with him, and he was guilty of the grossest negligence in not having it read to him. If fraud has been practiced upon him it is the result of his own negligence, and appellants are not bound by agent's frauds. *Andrews* v. *Clark*, 72 Md. 437, 438.

Principal is liable for the fraud of his agent with *indicia* of authority, *unless* it be shown that the loss sustained as the result of such fraud would not have occurred but for the negligence

and want of ordinary care on part of the person seeking to hold the principal liable. *Andrews* v. *Clark*, 72 Md. 396. When both parties are innocent, he who is negligent must suffer. *Story on Agency*, secs. 133–134.

Where a travelling salesman or drummer makes an agreement for his employer with a retail dealer, and such agreement is embodied in a printed or written contract, such contract cannot be changed, modified or controlled by oral evidence that the agent or drummer made statements differing from the written agreement. *Harrison* v. *Howe*, 67 N. W. R. 527.

Defendant sets up three fraudulent statements by agent, (1) sale to more than two merchants; (2) hard wood, plate-glass show case; (3) freight bill. The Court erred in receiving testimony concerning show case, for debtor does not know that such a show case as he bought was not sent; he never examined the goods; he does not know there was fraud. His testimony was calculated to, mislead and influence the jury in their verdict. The Court also erred in receiving testimony as to freight bill. The bill itself was best evidence and should have been produced. Defendant's statements concerning the same are inadmissible and conflicting. In letter to plaintiffs he says $8.65, in testimony he says $8.69. He never saw the bill himself but was told by his hauler what it was.

The prayer offered by plaintiffs properly stated the law in this case and should have been granted. The printed contract offered in evidence purported to set forth the whole agreement between the parties, and the defendant, over his own signature thereto, stated that he had read it all and found it to be complete and satisfactory and that he understood that any agreement to be binding upon plaintiffs should be endorsed thereon. This contract furnished plaintiffs all the knowledge they had as to defendant's agreement with salesman, and acting upon it they packed and shipped the goods. Defendant, with a duplicate of the contract in his possession and a clerk who could read and write, by his own conduct, led plaintiffs to believe that this was the contract he had made, and he is precluded from disputing it. *Hardy* v. *C. Bank*, 51 Md. 590,

591; *Andrews* v. *Clark*, 72 Md. 436; *Bank* v. *Morgan*, 117 U. S. 96.

The prayer granted by the Court is defective. 1st. Because it excludes from the consideration of the jury all the facts and circumstances immediately connected with the fraud of the salesman tending to show that the fraud complained of was occasioned by or resulted from the carelessness and negligence of defendant. *Andrews* v. *Clark*, 72 Md. 435–438. 2nd. Because it leaves the construction of the contract to the jury. It leaves the jury to determine the powers of Wonn and the rights of Pritchett as against plaintiffs. *Ferris* v. *Walsh*, 5 H. & J. 306; *Equit. Life Assur. Soc.* v. *Poe*, 53 Md. 34; *Cassard* v. *McGlannan*, 88 Md., 173; *B. & O. R. R. Co.* v. *Resley*, 7 Md. 314; *Story on Agency*, sec. 63, note 2. Wonn was but a special agent, acting under special written instructions from his principal, and the power of the agent and the rights of the party dealing with him, as against the principal, depend upon the legal construction of the written authority under which it is claimed the agent acted, and it is settled that the construction of the letter of authority is exclusively for the Court. *Ibid.*

*Goldsborough & Fletcher*, for the appellee, submitted the cause on their brief.

The evidence objected to in the fourth bill, went directly to establish the deceit of the plaintiff in the procurement of the contract. In fact, this evidence showed that the deceit amounted to false pretenses on the part of the plaintiff. This evidence is not that the plaintiff promised not to sell to other grocerymen, but that he said that he had not sold to any other groceryman, while in fact he had already sold to two. The value of the goods to the defendant depended in a great measure upon whether he would have competition. The false representation was material, it deceived the defendant and it was acted upon by him to his damage.

The prayer as offered ignored the evidence as to fraud and was properly rejected. The prayer as amended gave the ap-

pellants all the law they were entitled to, and even more, and they have no cause to object.    If there was fraud on the part of the plaintiff which "induced" or in other words deceived the defendant so that he was led into making the contract, the contract was void.    *O'Connell* v. *Kilpatrick*, 64 Md. 122.

The presenting of a paper to an illiterate person is a representation that the oral contract is contained therein and is a fraud if it is not so contained.    *Greenleaf*, vol. 1. sec. 284, note b; *A. & E. Ency.*, vol. 14, p. 30, (2 ed.); *Trambly* v. *Ricord*, 130 Mass. 259.

If an illiterate's signature is obtained by fraud and the instrument thus signed is materially different from the oral contract, and what the illiterate thought he was signing, this is fraud in the procurement, and may be availed of at law to defeat an action on the contract.    *A. & E. Ency.*, vol. 8, 641, (1 ed.)

A statement recklessly made, without knowledge of its truth, but which is in reality false, is a false statement knowingly made, within the settled rule.    *Cooper* v. *Schlesinger*, 111 U. S. 148.

A principal will not be allowed to profit by the fraud of his agent although ignorant of the fraud.    *Meyer* v. *Dean*, 5 L. R. A. 540 (N. Y.)

SCHMUCKER, J., delivered the opinion of the Court.

The appellants sued the appellee, in the Circuit Court for Dorchester County, in *assumpsit* on a written contract for the sale of certain patent medicines and flavoring extracts.    The appellee, as defendant, filed the general issue pleas and also a special plea asserting that the plaintiffs had procured the contract through fraud.    The verdict and judgment having been for the defendant, the plaintiffs appealed.    The record contains four exceptions to the Court's rulings on evidence and one to its action on the prayers.

The plaintiffs are manufacturing druggists in Iowa City, Iowa, and the defendant is engaged in the grocery business at Cambridge, Md., and is an illiterate person.

The written contract in question is somewhat unusual in form. It consists of a sheet of paper headed "ADVERTISING THAT PAYS" on which appears a list, constituting an assortment of goods with their respective prices amounting in the aggregate $186, together with the details of a scheme by which the plaintiffs as vendors warrant the quality of the goods, undertake to do certain things to assist in their advertisement for the benefit of the vendee and guarantee him a fixed profit on the sale of them. In the body of this scheme it is stated that the authority of the salesman is limited to taking orders on the regular forms of the vendors and that the latter will not be bound by his representations or agreements unless they are endorsed upon the order.

On the back of this sheet appears an order for the goods addressed to the vendors, as follows: "Gentlemen—Please ship the goods herein described f. o. b. Iowa City, Iowa, on terms and conditions herein stated, all of which we have carefully read and find complete and satisfactory. We understand that agreement to be binding must be noted hereon." To this is appended the signature of the defendant as the vendee and also that of the salesman; as well as an acceptance signed by the vendors.

At the trial of the case below, the plaintiffs having offered evidence tending to prove the execution and delivery of the contract and the shipment of the goods in accordance therewith and the failure of the defendant to pay for them, the latter offered his own testimony as to his residence and occupation and his inability to read or to write beyond signing his own name. He further testified to the following facts. On March 17th, 1903, Joseph Wonn, the plaintiffs' salesman, came to his store in Cambridge and offered to sell him the goods described in the contract. No bargain was made at that visit, but Wonn returned to the store at about 8 o'clock in the evening of the same day and urged the defendant to buy the goods, saying that he would leave town in the morning. He at the same time assured the defendant that none of the same kind of goods had been sold to any other person in Cambridge, al-

though he expected to sell one assortment of them to a dry goods merchant.   He also said that he was not permitted to sell more than two assortments of them in any one town or community, one to a grocer and the other to a dry goods man.

The defendant also testified that when Wonn urged him to order an assortment of the goods he told Wonn of his inability to read or write beyond signing his name whereupon the latter read or pretended to read the contract to him, but did not read the portion of it relating to the extent of his own authority.   That the defendant before signing the order for the goods objected to what might be the cost of the freight on the goods from Iowa City whereupon Wonn said that he guaranteed that the freight would not be over $1.50 or $2.00.   That the defendant, upon the faith of the various statements and representations so made to him by Wonn, signed the order proffered to him by the latter for the goods.

When the goods arrived at Cambridge the freight on them amounted to $8.69 which the defendant refused to pay and the goods were not delivered to him.   He at once caused his clerk to write for him to the plaintiffs informing them of the situation and refusing to take the goods unless they would act fairly with him.   A day or two after that he discovered that Wonn had already sold similar assortments of the plaintiffs goods to two other grocers in Cambridge at the time when he. induced him to sign the order for his assortment.

To the admission of all of this testimony and more of like tenor given by the defendant the plaintiffs objected by a single objection, but the Court overruled the objection and admitted the evidence and the plaintiffs took their first exception. There was no error on the part of the learned Judge below in overruling this objection for some portions of the testimony thus objected to in bulk were clearly admissible and when such is the case it is not error to overrule the objection. *Morrison* v. *Whiteside*, 17 Md. 458; *Everett* v. *Neff*, 28 Md. 184; *Burgoon* v. *Bixler*, 55 Md. 389.

The second exception was taken to the Court's refusal to

grant a motion made by the plaintiffs to strike out this testi-mony of the defendant as a whole. This motion was properly refused for the same reason that the original objection to the admission of the testimony was overruled.

The third exception was to the admission of the whole of the testimony of the defendant's clerk Reid as well as to the overruling of a motion to exclude it from the jury after it had been admitted. This witness testified that he was present at the interview between the plaintiff's salesman Wonn and the defendant when the contract for the purchase of the goods was signed. He heard the defendant tell Wonn that he could not read and also heard Wonn read or pretend to read the contract to him. The witness corroborated in detail the defendant's account of the statements and assurances made to him by Wonn at the time of signing the contract. As certain portions of this witness' testimony were clearly admissible there was no error in overruling this exception.

The fourth exception was taken to the admission of the evidence of Milton C. Richardson and D. B. Hueston that they were grocers in business at Cambridge and that on March 17th, 1903, Wonn as salesman of the plaintiffs, had sold to them assortments of goods similar to the one sold to the defendant and that the sales to them were made before the sale to the defendant. We think this evidence was properly admitted under the pleadings in the case. The defendant was not at liberty to introduce parol evidence to vary the terms of his contract of purchase which was in writing, but he could show by such evidence that he was induced to sign the contract through fraud. *Hurn* v. *Soper*, 6 H. & J. 276; *Davis* v. *Hamblin*, 51 Md. 540. And that could be done notwithstanding the fact that the evidence contradicted declarations of the defendant embodied in the written contract. *Southern Advertising Co.* v. *Metropole Co.*, 91 Md. 61; *Willis* v. *Kern*, 21 La. Ann. 749. The testimony of these two witnesses tended to prove the falsity of the statements by which the plaintiff's salesman induced the defendant to make the contract which was the cause of action.

The fact of the defendant's illiteracy did not relieve him from the obligation to inform himself of the contents of the contract by having it read to him by some one whose interests were not antagonistic to his own before he signed it, and he was estopped by his failure to do so from avoiding it on the ground that he was ignorant of its contents. *Cyc.*, vol. 9, p. 390; *Cooley on Torts*, sec. 488; *Spitze* v. *Balto. & Ohio R. R. Co.*, 75 Md. 162. But that obligation on his part did not prevent him from showing that he was induced to sign it through positive fraud. The testimony of the two witnesses now under consideration did not relate to the contents of the contract of sale. It tended to show the falsity of the statement that none of the same kind of goods had been sold or would be sold to any other grocer in Cambridge where the defendant carried on his business. This was a material statement and the defendant testified that he had relied on it in making the purchase. The statement was made by the plaintiff's agent in the ordinary course of the employment in which he was engaged and within the apparent and presumable scope of his authority and was material to the transaction with the defendant. Such statements have been repeatedly held to bind the principal as part of the *res gestæ*. *A. & E. Encycl.*, 2 ed., vol. 1, p. 1143; *Hambleton* v. *Rhind*, 94 Md. 491; *Southern Adv. Co.* v. *Metropole Co.*, *supra*.

Even if the plaintiffs were not bound as a matter of contract by these statements of their salesman made in the ordinary course of the employment in which he was engaged they would not be permitted to profit by his positive fraud in procuring the sale of their goods to the defendant by false statements as to the extent of sales made or to be made of the same kind of goods to other dealers in the latter's line of business in the same community. *Mayer* v. *Dean*, 115 N. Y. 556; *Ferguson* v. *Rafferty*, 128 Pa. 337, also reported with full notes supported by numerous authorities in 6 L. R. A. 33.

The fifth exception is to the action of the Court below in refusing the plaintiff's prayer as offered and in granting it as amended by the Court. The prayer as offered directed the

jury to find for the plaintiff for the contract price of the goods and interest if they found from the evidence that the defendant had signed and delivered the contract to the plaintiffs and that they had shipped to him the goods therein specified and that he had not paid for them. To this prayer the Court added the following modification: "Unless the jury shall further find from the evidence that the defendant was induced to sign the contract or order offered in evidence by false representations of the plaintiffs."

In view of the fact that the defense of fraud in obtaining the contract sued on was set up in the pleadings and of the character of the evidence, to which allusion has been made by us, tending to support that defense it was the duty of the Court to submit the question of fraud to the jury. As the plaintiffs' prayer in the form in which they offered it entirely ignored this issue and the evidence offered in its support, it would have been improper for the Court to have granted the prayer without the modification.

Finding no error in the action of the Court below we will affirm the judgment appealed from.

　　　　　　　　　*Judgment affirmed with costs.*

(Decided June 8th, 1904.